IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DONNA LEE WILLIAMS , <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | CV 16–143–M–DLC-JCL <br><br> FINDINGS & RECOMMENDATION |

Plaintiff Donna Williams brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Williams alleges disability since February 16, 2012. Williams' claim was denied initially and on reconsideration, and she requested an administrative hearing. On April 17, 2015, the Administrative Law Judge (ALJ) issued a decision finding Williams not disabled within the meaning of the Act. The Appeals Council denied Williams' request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

-1-

Williams was 49 years old at the time of her alleged onset date, 50 years old as of the date last insured, and 52 years old at the time of the ALJ's decision.

## I.     Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. §

404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III.  Discussion

The ALJ found at step one that Williams last met the insured status requirements of the Act on September 30, 2013, and had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Williams had degenerative disc disease of the lumbar and thoracic spine, which was a severe impairment. The ALJ concluded at step three that Williams did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ also found that while Williams' impairments could reasonably be expected to cause the alleged symptoms, her statements regarding the severity of those symptoms were not entirely credible. The ALJ concluded that Williams had the

residual functional capacity to perform a reduced range of light work. Based on that residual functional capacity assessment, the ALJ found at step four that Williams could not perform past relevant work as a chainsaw woodworker/artist. Moving on to step five, the ALJ found that Williams was not disabled because she was capable of performing light work as a packager, counter attendant, or laundry folder. (Doc. 10, at 27-33).

Williams challenges the ALJ's decision on several grounds. She argues the ALJ erred by: (1) not giving more weight to various medical opinions; (2) failing to categorize some impairments as severe; (3) overlooking other source evidence provided by a vocational rehabilitation counselor; (4) discounting her subjective symptom testimony; (5) discounting lay witness testimony, and; (6) finding her capable of light work.

### A. Medical Opinions

The Ninth Circuit distinguishes between three types of physicians: treating physicians, examining physicians, and non-examining physicians. The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the uncontradicted opinion of a treating or examining physician only for clear and convincing

reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. An ALJ may reject the opinion of a non-examining physician by providing specific and legitimate reasons supported by substantial evidence in the record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir 1998); *Haislip v. Colvin*, 2013 WL 5476426, at *10 (E.D. Cal. Sept 30, 2013).

    1.    <u>Dr. Walker Ashcraft</u>

Williams argues the ALJ erred by not giving more weight to the opinion of her treating family practitioner, Dr. Walker Ashcraft. From March 1992 until her alleged onset date in February 2012, Williams worked as a self-employed wood carver. (Doc. 10, at 226). In February 2012, Williams sought emergency treatment for back pain and followed up with her primary care physician, Dr. Walker Ashcraft. (Doc. 10, at 330). She saw Dr. Ashcraft a total of four times during the one-and-a-half year period between her alleged onset date and the expiration of her insured status in September 2013. (Doc. 10, at 304-350). Dr. Ashcraft treated Williams with prescription medication, and in September 2013 referred her to Dr. Richard Day for evaluation of her low back pain. (Doc. 10, at 309). When Dr. Ashcraft saw Williams again on October 2, 2013 – just days after

the expiration of her insured status – he noted that she could not afford the physiotherapy and epidural nerve blocks recommended by Dr. Day and had "been advised to seek Social Security disability." (Doc. 10, at 304). Williams construes this as an opinion on Dr. Ashcraft's part that she is disabled, and argues the ALJ erred by not giving that opinion controlling weight.

But Dr. Ashcraft's statement regarding disability is hardly a definitive opinion. While Dr. Ashcraft's treatment notes reflect that Williams had pain, tenderness, and limited range of motion in her lumbar spine, he did not specifically assess her functional limitations. (Doc. 10, at 304-32). The ALJ considered Dr. Ashcraft's findings and agreed they were indicative of "some amount of pain and limitation," but reasonably found they were not consistent with a disabling level of impairment. (Doc. 10, at 31).

### 2. Dr. Richard Day

Williams next argues the ALJ did not give sufficient weight to the opinion of examining neurologist, Dr. Richard Day, who saw Williams on referral from Dr. Ashcraft. Dr. Day examined Williams on September 25, 2013 – five days before the expiration of her insured status. (Doc. 10, at 309-20). Dr. Day confirmed that Williams had decreased lumbar range of motion, but found that she had normal strength, and that her mobility and gait were within normal limits. (Doc. 10, at

317). Dr. Day further found that Williams had significant shoulder rigidity and a diminished range of motion in her left arm. (Doc. 10, at 317, 320).

The ALJ found that Dr. Day's assessment was "indicative of some difficulties using the arm on a constant basis and lifting and carrying heavy objects." (Doc. 10, at 31). Citing Dr. Day's notes, the ALJ determined that Williams would be "able to lift and carry moderately heavy objects," could "stand and walk without limitation" and could use her arms "for repetitive activity on a frequent basis."[1] (Doc. 10, at 31).

The ALJ's finding that Williams was capable of using both arms frequently directly contradicted that of the state agency non-examining physicians, who determined based on their review of the medical records, including Dr. Day's report, that Williams was limited to occasional overhead reaching with her left arm. (Doc. 10, at 95 & 102). The ALJ recognized that the state agency physicians are "highly qualified...experts in the evaluation of the medical issues in disability claims under the Act" but rejected their assessment of Williams' left arm limitations. In particular, the ALJ found that Dr. Day's report was not enough to

---

[1] "Occasional" activity is activity that is present up to one-third of the time in an occupation, "frequent" activity occurs between one-third and two-thirds of the time, and "constant" activity takes place two-thirds or more of the time in an occupation. 2 Dictionary of Occupational Titles app. C, at 1013 (4th ed. 1991).

substantiate "such extensive limitation on the use of the left arm." (Doc. 10, at 31-32).

Although Dr. Day's findings may not have been extensive, they were uncontradicted. By independently reviewing and interpreting those findings, the ALJ impermissibly substituted his judgment for that of the non-examining physicians. This was error.

While "[a] decision of the ALJ will not be reversed for errors that are harmless," *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), the Court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting that [evidence], could have reached a different disability determination." *Stout v. Commissioner Social Security*, 454 F.3d 1050, 1056 (9th Cir. 2006). At the administrative hearing, the vocational expert confirmed that if "the use of the upper extremities bilaterally comes down to occasional," that would interfere with the ability to engage in substantial gainful activity. (Doc. 10, at 86). It is not entirely clear from this statement whether Williams would be disabled if she was limited to occasional overhead reaching with her left arm. Consequently, the ALJ's failure to properly reject this evidence cannot be viewed as harmless and this case should be remanded.

3. Dr. Stuart Kieran

Williams argues the ALJ erred because he did not consider the results of neurological consultation performed by Dr. Stuart Kieran in January 2015. (Doc. 10, at 410). When Dr. Kieran examined Williams, she had been experiencing "numbness and tingling in both upper extremities for almost one year." (Doc. 10, at 410). But because Williams insured status had expired nearly a year-and-a-half earlier, the ALJ was not required to specifically discuss Dr. Kieran's opinion. While retrospective medical opinions may be relevant for purposes of assessing the severity of a claimant's impairments and establishing a disability onset date, Dr. Kieran's opinion was not retrospective. He did not address Williams' condition during the relevant time period, focusing instead on her more recent complaints of numbness and tingling in her upper extremities.

**B. Subjective Symptom Testimony**

The ALJ must engage in a two-step analysis for purposes of determining the extent to which a claimant's subjective symptom testimony should be credited. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citations omitted). Where, as here, the ALJ finds the claimant has met this evidentiary threshold and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d 493 (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific"evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony [he] finds not credible, and linking "that

testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown-Hunter,* 806 F.3d at 494.

Here, the ALJ briefly summarized Williams' testimony and then identified three reasons for discounting the alleged severity of her symptoms. First, he found that "the evidence does not support her allegations." (Doc. 10, at 30). The ALJ noted that diagnostic imaging of her lumbar and thoracic spine from February and June 2012 showed only mild degenerative changes, and determined that those "objective findings [were] only partially consistent with [Williams'] allegations of pain." (Doc. 10, at 30-31). While a lack of objective medical evidence is one relevant factor for the ALJ to consider, it "cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Second, the ALJ discounted Williams' testimony as to the extent of her pain and limitations because the record showed conservative treatment prior to the date last insured. (Doc. 10, at 31). The ALJ noted that Williams was prescribed medication for her back pain and had an injection to her lumbar spine, which he agreed was "consistent with some amount of pain and limitation." (Doc. 10, at 31). But the ALJ pointed out that after "her emergency room visit in February 2012, [she] attended only four medical appointments until the expiration of [her]

date last insured" in September 2013. (Doc. 27). The ALJ recognized that Williams sought and received more aggressive treatment after September 2013, but found the fact that she did not pursue more aggressive treatment during the relevant period undermined her testimony as to the extent of her pain.

Evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). But a claimant's conservative course of treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Ninth Circuit has held subjective symptom testimony cannot be rejected based on lack of treatment when the record establishes that the claimant could not afford treatment. See *Regennitter v. Comm's of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.").

Consistent with the evidence in the record, Williams testified at the hearing that she could not afford all of the treatment recommended by her doctors. (Doc. 10, at 68). The ALJ erred by discounting Williams' symptom testimony based on

her conservative course of treatment without considering her explanation that she could not afford more aggressive treatment during the relevant period. See *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (finding the claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding"); *Fisher v. Colvin*, 2015 WL 1442064, at *17 (E.D. Cal. Feb. 20, 2015) (finding the ALJ erred by discounting claimant's testimony based on lack of treatment where the claimant testified she could not afford to pay for treatment).

Finally, the ALJ discredited Williams' allegations of difficulties walking and standing because she was "not observed to regularly used assistive devices to aid with these activities." (Doc. 10, at 31). But no doctor had prescribed an assistive device, and Williams did not claim to need one for walking or standing. The Court fails to see how the fact that Williams was not seen regularly using an assistive device undermines her testimony.

While the ALJ permissibly considered whether the objective medical evidence supported Williams' allegations, that alone was not enough to discount her symptom testimony. The two other reasons provided by the ALJ were not clear and convincing. Absent sufficiently specific reasons, the court is unable to conduct a meaningful review of the ALJ's credibility determination. *See Brown-*

*Hunter*, 806 F.3d at 492 (explaining that if an ALJ fails to specify his or her reasons for finding claimant testimony not credible, the "error will usually not be harmless"). Consequently, the ALJ's failure to properly reject this evidence cannot be viewed as harmless. Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for finding Williams' subjective allegations not credible, this case should be remanded.

### C. Lay Witness

Williams argues the ALJ did not provide germane reasons for discounting a recorded statement provided by her son, Jessy Williams. (Doc. 10, at 263). Jessy stated that when Williams hurt her back in early 2012, she was "laid up in bed and couldn't really do anything" for two years. (Doc. 10, at 264). Jessy explained that during that period of time he did "everything, household chores, helping her clean herself up, sponge baths, cooking, laundry. Everything sir." (Doc. 10, at 264).

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting

*Dodrill*, 12 F.3d at 919).

The ALJ gave Jessy's statement little weight because he was a family member and so would be sympathetic to Williams, and because he was not medically trained. (Doc. 10, at 32). Neither one of these two reasons is a legitimate basis for rejecting lay witness testimony. See e.g. 12 F.3d at 919; *Bruce v. Astrue*, 557 F.3d 1113, 1116 & n. 1 (9th Cir. 2009) (fact that a lay witness is not a medical or vocational expert does not disqualify her from stating an opinion as to how the claimant's condition affects his ability to perform basic work activities); *Valentine v. Commissioner*, 574 F.3d 685, 694 (9th Cir. 2009) (lay witness testimony from friends and family members may not be disregarded simply based on the lay witness's relationship to the claimant or because of any potential financial interest).

The ALJ also found that Jessy's "observations are not consistent with the record prior to the expiration of the claimant's date last insured." (Doc. 10, at 32). This boilerplate statement is not supported by any further explanation. If, on remand, the ALJ discounts lay witness testimony, he should provide sufficiently specific reasoning to allow for meaningful review.

### D. Severe Impairments

Williams contends the ALJ erred at step two because he should have

-16-

included depression as a severe impairment. An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

When Dr. Day examined Williams in September 2013, he diagnosed her with depression. (Doc. 10, at 311). Until then, Williams' mental status exam findings were entirely normal. (Doc. 10, at 307, 317, 329, 332, 345). In light of the fact that Williams was not diagnosed with depression until September 2013 and did not exhibit any mental status abnormalities consistent with limitations attributable to depression, the ALJ found that Williams' depression was not a severe impairment. (Doc. 10, at 28). This finding is supported by substantial evidence.

Williams nonetheless argues the ALJ should have found that her depression was severe based on a psychological evaluation performed by Dr. James Wahlberg in September 2014 – approximately one year after her insured status expired.

(Doc. 10, at 383). The ALJ referred to Dr. Wahberg's evaluation, but reasonably found that it was not indicative of Williams' mental functioning prior to her date last insured. (Doc. 10, at 28).

### E. Other Sources

Williams argues the ALJ failed to consider records from his vocational rehabilitation counselor, Jerry Zook. Zook qualifies as an "other source" who can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. *See* 20 C.F.R. §§ 404.1513. An ALJ may discount evidence from an "other source" if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012). Zook worked with Williams for six months – from July 2014 through March 2015. (Doc. 10, at 241-62). In March 2015, Zook wrote a letter stating that he believed Williams "would struggle with employment services at this time" in light of her "current emotional and physical functioning." (Doc. 10, at 262).

An ALJ does not have to address every piece of evidence in the record, and need only explain the rejection of significant, probative evidence. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the ALJ mentioned that Williams had attempted to go through vocational rehabilitation and was taking classes to obtain her GED, but did not specifically address Zook's

-18-

March 2015 letter. (Doc. 10, at 30). But because Zook's letter addressed Williams "current" level of functioning as of March 2015 – approximately a year-and-a-half after Williams' insured status had expired – it was not significant probative evidence. Although the ALJ did not specifically discuss Zook's records, he clearly considered them as evidenced by the fact that he referred to them in his discussion. Zook did not identify any specific functional limitations, and in fact observed that when he first met with Williams in July 2014, she stood for the duration of their one-and-a-half hour meeting and did not display any pain behaviors. (Doc. 10, at 241). Because Zook's records post-date the date last insured by more than a year and did not identify any functional limitations, they were not significant probative evidence, and any error on the ALJ's part in not addressing them more specifically was harmless.

### F. Remand

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The court should credit evidence as true and remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and

(3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, it is not entirely clear whether Williams would be disabled if she was limited to occasional overhead reaching with her left arm. Because the ALJ did not provide clear and convincing reasons for discounting Williams' symptom testimony and there are outstanding issues that must be resolved before a proper disability determination can be made, including further consideration of the medical opinions discussed above, this case should be remanded further proceedings.

## IV. Conclusion

IT IS RECOMMENDED that the Commissioner's decision be reversed and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 28th day of September, 2017

Jeremiah C. Lynch
United States Magistrate Judge